Brian A. BURWELL, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CM–98.

District of Columbia Court of Appeals.

Argued April 13, 2006.
Decided June 22, 2006.

Kyle A. McGonigal, for appellant.

Elizabeth Gabriel, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Roy W. McLeese III, John W. Borchert, and Stephanie L. Brooker, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, RUIZ, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Following a bench trial, Brian Burwell was found guilty of unlawful possession of marijuana, in violation of D.C.Code § 48–904.01(d) (2001). On appeal, he contends that the evidence was insufficient as a matter of law to support his conviction. We disagree and affirm.

I.

THE TRIAL COURT PROCEEDINGS

A. *The judge's evidentiary findings.*

The sole witness at the trial of Burwell

and of his codefendant, Earl Johnson,[1] was Officer Michael Johnson of the United States Park Police. The trial judge "found the officer credible, his manner and demeanor on the stand appropriate and believable, [and that] his testimony had the ring of truth." Based on Officer Johnson's testimony, the judge made essentially uncontested findings of fact as set forth below.

On April 16, 2004, at 3:25 a.m., Officer Johnson stopped a car which was being driven by Burwell.[2] Earl Johnson was riding in the front seat, and a third man, one Sutton, was in the rear seat.[3] After Officer Johnson approached the vehicle, some or all of the three occupants stated that they were on their way home from a party. While speaking with the driver, the officer observed "the shavings of a blunt [cigar]," in the rear seat area, as well as the outside wrapper of a cigar. Knowing from experience that "hollowed out" cigar shells are used to smoke marijuana, the officer directed Burwell to step out of the vehicle and proceed to the rear of the car. Officer Johnson then questioned Burwell, and Burwell stated that the car belonged to his girlfriend. The officer asked for, and received, Burwell's consent to a search of the vehicle, and he directed Earl Johnson to step out from the passenger seat.

Using his flashlight to illuminate the inside of the vehicle, Officer Johnson observed small amounts of a leafy substance (later shown to be marijuana) lying on the front floor board. There was also marijuana on the tip of the car's lighter, which also was on the floor. When Officer Johnson approached the rear door, he detected the odor of marijuana,[4] and he found a bag containing marijuana between the rear seat and the rear door on the driver's side. The judge then found that

> [t]here was a further search, and one ounce of marijuana was found in the glove box, ... as well as a Backwoods cigar container or wrapper in Mr. Johnson's coat pocket and other cigars on the seat next to Mr. Sutton. These cigars are typically hollowed out and filled with marijuana to smoke as blunts.... [T]he substances were tested and all tested positive for marijuana.[5]

Finally, at the request of the prosecutor, the judge made a finding that "the officer asked [if] anyone [would] take responsibility for the marijuana and no one did."

B. *The judge's decision.*

Based on the foregoing evidentiary findings, and after hearing argument, the judge found both defendants guilty beyond a reasonable doubt. The judge stated, in pertinent part, as follows:

> As to both defendants, what's also relevant, I don't think which has been mentioned, is that they stated that they were in the car on their way back from a party headed home. So, in other words,

1. Earl Johnson was also convicted of unlawful possession of marijuana, but he did not appeal.

2. Officer Johnson made the stop for littering after seeing a popsicle stick and wrapper thrown out of the car window.

3. Sutton was not tried together with Burwell and Johnson. After Officer Johnson explained why he had stopped the car, Sutton admitted that he was the person responsible for the littering and apologized to the officer.

4. The judge emphasized that "I credit that, I have no reason to discredit that." He apparently so stated because a different judge in a separate (federal) drug prosecution case had disbelieved Officer Johnson's testimony that he had smelled marijuana.

5. No marijuana was found on the cigar or the wrappers.

it's not a case of someone being picked up recently, or someone having just gotten into the car, but that they had been in a car, and on their way back from somewhere, and that they are, in fact, together and acting together. I think that concert is significant.

I think that the only testimony we have about the ownership of the car is that Mr. Burwell's testimony ... that it's his girlfriend's car, not that he had borrowed it for the evening, or that he just got it, but that it's his girlfriend's car. So, I don't think that we can infer that he's not aware of anything in there. So, I believe that the evidence shows beyond a reasonable doubt that he is aware of the marijuana in the glove compartment. That is bolstered by the fact that there is marijuana in several places in the car, in the backseat, on the front floorboards, in the glove compartment, that they're coming home, and that they're coming home from a party together.

In addition, that there are shavings of a blunt in the backseat, and, as well, Backwoods' wrappers in the backseat and on Mr. Johnson also, I believe, show a concert of activity in possessing and using the marijuana or preparing to use the marijuana, at some point, that I think that, therefore, Mr. Burwell is knowledgeable about and does exercise dominion and control over the marijuana, certainly in the glove compartment of the car he's driving, and has been driving that evening. And that it's not buried in the glove compartment, but in the front of the glove compartment, and given the other activities of his fellow passengers, I, similarly, would believe

that he's knowledgeable of and intended to exercise dominion and control of that marijuana, and, therefore, I find him guilty of possession of marijuana.[6]

## II.

## LEGAL ANALYSIS

### A. Standard of review.

■■■ Where a defendant has been tried by a judge sitting without a jury, "the court may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (2001). In jury trials, "[j]udicial review is deferential, giving full play to the responsibility of the trier of fact to resolve conflicts in testimony,[7] to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (internal quotation marks omitted); the same principles apply to bench trials. *In re T.M.,* 577 A.2d 1149, 1151 (D.C.1990). We must sustain Burwell's conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivas,* 783 A.2d at 134 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781) (italics added in *Jackson* ). To find the defendant guilty beyond a reasonable doubt, the trier of fact is required "to reach a subjective state of near certitude of the guilt of the accused." *Jackson,* 443

---

6. The judge indicated, however, that he would not "go as far as the government and say that [Mr. Johnson] or Mr. Burwell possessed the marijuana in the back seat."

7. In this case, of course, there are no such conflicts.

U.S. at 315, 99 S.Ct. 2781; *Rivas,* 783 A.2d at 133.

## B. *Constructive possession.*

In its en banc decision in *Rivas,* this court set forth the elements of constructive possession of a controlled substance:

> To prove constructive possession, the prosecution was required to show that Rivas knew that the cocaine was present in the car and that he had both the ability and the intent to exercise dominion or control over it. *See, e.g., In re M.I.W.,* 667 A.2d 573, 575 (D.C.1995); *Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990). Constructive possession may be sole or joint, *see Parker v. United States,* 601 A.2d 45, 51–52 (D.C. 1991), and may be proven by direct or circumstantial evidence. *See Brown v. United States,* 546 A.2d 390, 397–98 (D.C.1988).

783 A.2d at 129. Quoting from *Bernard,* 575 A.2d at 1195, we explained in *Rivas:*

> To establish constructive possession it is not sufficient for the prosecution to show that appellants were within reach of the drugs; mere proximity to an illegal item is not enough. Rather, the government must establish that appellants knew of the location of the cocaine and that they exercised dominion and control over it. Specifically, the prosecution was required to prove that each appellant knowingly had both the power and the intention at a given time to exercise dominion or control over the cocaine.

## C. *Application of the law to the facts.*

■ In light of the foregoing authorities, we must determine whether, viewing the record in the light most favorable to the prosecution, and drawing all reasonable inferences in the government's favor, the trial judge could properly find Burwell guilty beyond a reasonable doubt. We answer that question in the affirmative.

It is undisputed that a substantial amount of marijuana was found in an automobile being operated by Burwell. The issue is therefore whether the government proved that Burwell knew of the marijuana and had the ability and intent to guide its destiny. Since the trial judge apparently limited his finding of guilt as to Burwell to the marijuana in the glove compartment, we confine ourselves to an inquiry whether Burwell was in constructive possession of the contraband recovered from that location.

We begin our analysis with the undisputed evidence that Burwell was the driver of the car, that it belonged to his girlfriend, and that Burwell had driven it from (and, inferably, to) a party earlier that evening. Viewed in the light most favorable to the prosecution, the record thus reveals that Burwell was in charge of, and operated for a significant period of time, a vehicle which, at the time of the stop, contained a substantial amount of marijuana.

Applying the standard of review outlined in *Rivas, Jackson,* and *T.M.,* we have no doubt that the prosecution established that Burwell knew of the presence of marijuana in the car, or at least that the trial judge could reasonably so find. If Officer Johnson was able to smell marijuana as soon as the rear door was opened, then an impartial trier of fact could fairly conclude that Burwell could smell it too. Just as "[t]he smell of PCP emanating from the car indicated [that] it was likely that appellants knew [that] the car contained drugs," *Speight v. United States,* 671 A.2d 442, 455 (D.C.1996), so, too, the smell of marijuana created a similar likelihood in the present case. Moreover, marijuana was found in various parts of the vehicle, and the trial judge could fairly infer that Burwell could

not have been unaware of it. We therefore have little difficulty in concluding that evidence was sufficient to permit the judge to find that the prosecution had satisfied the "knowledge" element of constructive possession of marijuana. To be sure, neither the smell nor the presence of other marijuana *necessarily* established that Burwell was aware of the contents of the glove compartment, but for reasons stated in greater detail *infra,* we are satisfied that the judge could fairly draw the necessary inference.

Turning now to the question whether the prosecution proved that Burwell had the intent to guide the destiny of the marijuana, we think it important at the outset to note that Burwell was the driver of the vehicle, and in possession and control of it. He was not merely a passenger. This court, like other courts, has been far more ready to sustain an inference of requisite knowledge and intent on the part of the driver than on the part of a passenger, even where, as here, the driver has not been shown to be the registered owner of the vehicle. Although none of the cases we discuss below is squarely in point, we conclude that, collectively, the decisions provide substantial support for a strong inference of knowledge and intent on Burwell's part.

"It is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places." *Taylor v. United States,* 662 A.2d 1368, 1373 (D.C.1995). In *Blackmon v. United States,* 835 A.2d 1070 (D.C.2003), a case involving the question of probable cause to arrest rather than the sufficiency of evidence to convict, the court articulated the difference, for constructive possession purposes, between driver and passenger:

Generally, courts take a closer look at situations in which a passenger is found in close proximity to contraband when the passenger is the accused. *Rivas* is a good example of such a case. *See also, e.g., United States v. Bethea,* 143 U.S.App. D.C. 68, 71, 442 F.2d 790, 793 (1971) ("Merely showing that appellant was a passenger in the car and in proximity to the heroin is, without more, insufficient to support a finding of possession" (citations omitted)). *However, because appellant was in the driver's seat, a fact from which a reasonable person might infer ownership of the car (or at least entitlement to drive it), there is a much stronger likelihood that he was at least in joint constructive possession of the cocaine.*

*Id.* at 1075 (emphasis added). The court was not faced with the question whether this inference was sufficient to support a conviction of the driver on a constructive possession theory, and expressly declined to decide it. *Id.*

In *Rivas,* in reversing a passenger's conviction of constructive possession of drugs in plain view, the court took pains to distinguish his situation from that of the driver, Melgar:

There is no serious doubt that at least one of the car's occupants was in possession of the drugs, and the jury could reasonably infer that Melgar, *who was the owner and driver of the automobile* and who was found with $236 in cash on his person, had control over its contents.

783 A.2d at 135 (emphasis added).[8]

In *Rivas,* unlike in this case, the driver owned the car; but that is not dispositive. In *Olafisoye v. United States,* 857 A.2d 1078 (D.C.2004), we affirmed the conviction of a driver of a car for constructive possession of marijuana which was found

---

8. This case differs, however, in that no large amount of cash was found on Burwell.

under the front passenger seat, and thus not in plain view. In holding that the evidence was sufficient, we stated:

> First, the marijuana was found in the car that appellant was driving just moments before his arrest, which was also the same car that witnesses testified they saw him drive on previous occasions. Moreover, no other passengers were in the car when appellant was arrested, a fact which tends to negate any inference that the marijuana might have belonged to someone else. *Appellant argues that the government failed to prove the car was his, but such proof is not required; the fact that he was in possession of the car at the relevant time is the critical fact, regardless of who its owner was.* Moreover, he did not tell the arresting officers that the car belonged to anyone else when they asked him whether he would like the car impounded or driven back to the station house. On the proven facts, the court could reasonably find that appellant constructively possessed the marijuana which the police found in the car moments after he was arrested while driving it. *See, e.g., Carter v. United States,* 614 A.2d 542, 544 (D.C.1992).

*Id.* at 1087–88 (emphasis added);[9] *see, generally,* Emile F. Short, *Annotation: Conviction of Possession of Illicit Drugs Found in Automobile of Which Defendant Was Not Sole Occupant,* 57 A.L.R.3d 1319 (1974 & Supp.2005).

We recognize that Burwell's status as the driver has no talismanic quality, nor is it necessarily decisive. In *United States v. Crain,* 33 F.3d 480 (5th Cir.1994), Crain was driving an automobile while Watkins, his codefendant, and Thompson, Crain's cousin, were his passengers. The men noticed a patrol car behind them with its lights flashing. According to Thompson, who was called as a witness by Crain, Crain stated, on becoming aware of the police presence, that "the only thing we are going to get is a ticket for speeding." Watkins remonstrated, however, that "I got this dope," and he asked Thompson to "hide it or something." Thompson refused to try to do so, insisting that this was Watkins' problem. Thompson testified that Watkins then placed the drugs under the driver's seat and "set back straight." *Id.* at 482. On this record, the court reversed Crain's conviction of possession of cocaine with intent to distribute it (PWID):[10]

> In an attempt to prove constructive possession, the government emphasizes the fact that the cocaine was found under the driver's seat where Crain had been sitting, and it contends that because Crain was driving the vehicle, he had control over the vehicle and therefore the drugs. However, we have held that when two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there. . . . We are especially reluctant to infer constructive possession of contraband by one occupant when there

---

**9.** No two cases are alike, and *Olafisoye* is distinguishable from the present case in that here, there were other passengers in the car and Burwell claimed that he was not the owner of the vehicle and had merely borrowed it. On the other hand, the contraband in *Olafisoye* was under the passenger seat and not in plain view. The language from *Olafisoye* which we have italicized, however, is persuasive in this case, especially in light of *Taylor,* 662 A.2d at 1373 (quoted at p. 767, *supra*).

**10.** Interestingly, however, the court affirmed Crain's conviction for conspiracy to distribute cocaine on the theory that Crain knew that Watkins was driving to Fort Worth to obtain drugs and helped him with the driving.

is evidence in the record explicitly linking the contraband to another occupant. *Id.* at 486 (citation omitted); *accord United States v. Wright,* 24 F.3d 732, 735 (5th Cir.1994) ("while dominion over the vehicle certainly will help the government's case, it alone cannot establish constructive possession of [contraband] found in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the [contraband]"); *United States v. Ortega Reyna,* 148 F.3d 540, 544 (5th Cir.1998) (per curiam) ("As a general rule, a [trier of fact] may infer knowledge of the presence of drugs from the exercise of control of a vehicle containing such contraband. When the drugs are secreted in hidden compartments, however, this court has normally required additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge...." (Citations and internal quotation marks omitted.))

In the present case, Burwell was the driver, though not the owner, of the car in which the marijuana was found.[11] We assume, *arguendo,* that this fact, standing alone, would not suffice to sustain a finding, beyond a reasonable doubt, that Burwell was in constructive possession of marijuana located in the glove compartment. But, on this record, Burwell's dominion over the vehicle does not stand alone. Marijuana was found all over the car. The emptied cigar shell and loose tobacco shavings in the rear seat area, the open package of cigars in the pocket of the passenger in the front seat, the presence of marijuana on the tip of the automobile's lighter, and the smell of marijuana in the car, all suggest that the occupants had been smoking marijuana quite recently or were preparing to do so, and were in joint constructive possession of it. Viewing the record in the light most favorable to the prosecution, we conclude that the circumstances reinforce, rather than rebut, the inference to be drawn from Burwell's control and operation of the car. At the very least, an impartial trier of fact could reasonably so find.

Although the judge's decision is not entirely clear on the point, it appears, as we have noted, that he found Burwell guilty of possession only of the marijuana in the glove compartment. The judge explicitly found the evidence insufficient to connect Burwell to the drugs in the rear of the car, although he effectively found that Burwell and his codefendant were able to smell the contraband. It is, of course, theoretically possible that, unbeknownst to Burwell, the marijuana in the glove compartment was already in that location when he borrowed the car,[12] and that even if Burwell knew of the other marijuana and cigar shells, he was not aware of the bag in the glove box. Under this hypothetical scenario, Burwell's conviction would be subject to reversal because the judge found him guilty of possessing the wrong marijuana.

Although, theoretically, it is not inconceivable that Burwell and his companions were aware of, and even using, the mari-

11. Although Burwell told Officer Johnson that the car belonged to his girlfriend, there was no evidence regarding the frequency with which he was permitted to use it, nor does the record show whether the car's owner was a user of marijuana.

12. During the trial, Burwell's counsel proffered that a man called Brown placed the marijuana in the glove compartment before Burwell picked it up and would so testify. Counsel was appointed for Brown, and Brown invoked his privilege against self-incrimination. The prosecutor then "debriefed" Brown in conformity with *Carter v. United States,* 684 A.2d 331 (D.C.1996) (en banc), and Brown was offered use immunity. Ultimately, however, Brown did not testify because Burwell stated that he did not want Brown to be called as a witness.

juana in the vehicle without having the slightest notion that there was an additional ounce in the glove compartment, this was not an inference that the trial judge was compelled to draw. Such a state of affairs would, at the very least, rest on a remarkable coincidence-marijuana of which Burwell was aware and marijuana of which he knew nothing would have to be co-existing at the same time in the car that he was driving. "Coincidences happen, but an explanation not predicated on happenstance is often the one that has the ring of truth." *Tursio v. United States,* 634 A.2d 1205, 1213 (D.C.1993) (quoting *Poulnot v. District of Columbia,* 608 A.2d 134, 139 (D.C.1992)). Drawing all reasonable inferences in the government's favor, we sustain the trial judge's finding that Burwell knew of the marijuana in the glove compartment, intended to guide its destiny, and was in joint constructive possession of it. Accordingly, Burwell's conviction is

*Affirmed.*