917 A.2d 643 (2007)
In re R.G.
No. 05-FS-509.
District of Columbia Court of Appeals.
Argued November 7, 2006.
Decided February 22, 2007.
*645 David H. Stringer, for appellant.
Janice Y. Sheppard, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Chief, Juvenile and Criminal Section, were on the brief, for the District of Columbia.
Before RUIZ and GLICKMAN, Associate Judges, and SCHWELB, Senior Judge.
SCHWELB, Senior Judge:
Following a fact-finding hearing in this juvenile delinquency case, R.G., a girl aged seventeen at the time of the offense, was found guilty, on a constructive possession theory, of carrying a pistol without a license (CPWOL), unlawful possession of an unregistered firearm (UF), unlawful possession of ammunition for an unregistered firearm (UA), and unlawful possession of a controlled substance (marijuana). On appeal, R.G. contends that the evidence was insufficient as a matter of law to support the finding of guilt with respect to the weapons offenses. R.G. acknowledges her guilt of unlawful possession of marijuana.
We conclude that although there was sufficient evidence to support a finding that R.G. had knowledge of the location of the pistol, which was a few feet from her, the evidence was insufficient, as a matter of law, to establish beyond a reasonable doubt that R.G. had the intent to exercise dominion and control over the pistol. Because such intent is an element of constructive possession, we vacate for insufficient evidence the adjudication of guilt as to CPWOL, UF and UA. We affirm as to unlawful possession of marijuana.

I.
The sole question on appeal is whether the evidence was sufficient to establish, beyond a reasonable doubt, that R.G. was in constructive possession of a pistol and ammunition[1] that were found in her bedroom *646 during the execution of a search warrant on September 24, 2004. Police testimony introduced by the District of Columbia established that R.G. had been sharing the bed in her bedroom with her adult boyfriend. A search of her bedroom disclosed the presence of a .38 caliber pistol on the windowsill adjacent to the bed. In addition to the pistol, the police recovered a single plastic ziploc bag of marijuana, which was in plain view on a lunch pail near the bed. A drape and a plastic sheet were between the bed and the window, and while the pistol was not in plain view with the sheet in place, it could be seen from the bed if the sheet was pushed back a little. A police officer testified that the weapon was "immediately in arm's reach of the bed," and that when he saw R.G. on the bed, she was approximately four or five feet from the pistol. He further testified that if R.G. and her boyfriend "were laying on the bed with their head[s] at that end of the bed, [the pistol] would have been right above their heads." The foregoing testimony adduced by the District was essentially undisputed.
Disregarding her attorney's advice, R.G. took the witness stand in her own defense. She freely acknowledged that the single bag of marijuana recovered from her bedroom belonged to her, but she insisted that she had no knowledge of the presence of the handgun. R.G. had volunteered to the officers, and she reiterated at the evidentiary hearing, that she had anticipated a police search of her home because two of her cousins had been arrested on the previous day. She also stated that drugs and weapons had been recovered from the house during previous police searches. R.G. told the trial court that she had been living at her residence, which was owned by her grandmother, for five months. She also testified that the house had four bedrooms, and that she lived there with nine other family members, including six adults.
R.G. testified that on the night of her arrest she was asleep in her room when her boyfriend, who was outside on the street, threw a rock at her window at about 3:00 a.m., apparently in order to bring his presence to her attention.[2] R.G. opened the door to the house and let the boyfriend come in, and the couple went to bed. At approximately 4:30 or 5:00 a.m., however, the two of them were woken by the sound of the police coming up the stairs. The officers found the pistol and the marijuana, and both R.G. and her boyfriend were taken into custody.
R.G. stated that she did not know that there was a pistol in her room. She explained that she was "fun," and that other members of the household or guests liked to "chill" and hang out in her room. R.G. also asserted that she would have noticed if the sheet behind her bed had been moved, for she would have felt air coming into the room.
The trial judge found R.G. guilty of all charges. The judge expressly declined to credit R.G.'s testimony that she was unaware of the presence of a pistol in her room. In making this credibility assessment, the judge relied on uncontradicted evidence that the pistol was in close proximity to R.G., that the room was small, and that it was R.G.'s room. The judge found, in conformity with R.G.'s testimony, that other people in the house would "hang out" in R.G.'s room. The judge explained as follows her finding that R.G. was guilty of all charges:

*647 For a finding of [CPWOL], the court was able to find that the [District] met those elements in this case. The court believes the [District] proved all the elements beyond a reasonable doubt. The firearm was not registered, the ammunition was not registered. The respondent admitted to the marijuana. There was construct[ive] possession in this case. It was in arm's reach of her bed, and it was no mistake, or in this case there was the requisite knowledge that was shown by the [District] . . . so I find her guilty on all counts.
Although the judge stated generally that the District proved "those elements in this case," she did not identify intent to exercise dominion or control over the pistol as one of the elements, nor did she make an explicit finding with regard to whether or not R.G. had such an intent.[3] Thus, although the judge made somewhat detailed evidentiary findings, she did not discuss, at least expressly, what we regard as the most difficult question in the case, namely, whether the evidence was sufficient to establish, beyond a reasonable doubt, that R.G. intended to guide the destiny of the loaded pistol, nor did the judge make a separate finding as to R.G.'s intent.

II.
The District's CPWOL statute makes it unlawful for any person "to carry within the District of Columbia either openly or concealed on or about their [sic] person, a pistol without a license. . . ." D.C.Code § 22-4504(a) (2001). The District's theory in this case is that R.G. violated this statute by "constructively" possessing the pistol. To show constructive possession of contraband, the District must prove that the accused knew of its presence and that "[s]he had both the ability and the intent to exercise dominion or control over it." Rivas v. United States, 783 A.2d 125, 129 (D.C.2001) (en banc) (citing, inter alia, In re M.I.W., 667 A.2d 573, 575 (D.C.1995)). "Constructive possession may be sole or joint and may be proven by direct or circumstantial evidence." Id. (internal citation omitted); see also Wheeler v. United States, 494 A.2d 170, 172 (D.C.1985).
"Constructive possession by itself . . . is not sufficient to sustain a [CPWOL] conviction." White v. United States, 714 A.2d 115, 119 (D.C.1998) (citation omitted). "Because `possession' is a broader concept than to `carry on or about the person,' . . . the government's evidence must go beyond mere proof of constructive possession and must show that the pistol was in such proximity to the person as to be convenient of access and within reach." Id. (citation and internal quotation marks omitted). In this case, however, there can be little doubt that the proximity requirement was satisfied, and R.G. does not argue to the contrary. Accordingly, with respect to the CPWOL count, as well as the UF and UA charges, the case turns on whether the District established, beyond a reasonable doubt, that R.G. constructively possessed the pistol and ammunition.
In Rivas, the en banc court elaborated as follows on the intent requirement applicable to cases of constructive possession:
[T]here must be something more in the totality of the circumstances  a word or deed, a relationship or other probative factor  that, considered in conjunction with the evidence of proximity and knowledge, proves beyond a reasonable doubt that [appellant] intended to exercise *648 dominion or control over the drugs, and was not a mere bystander.
Rivas, 783 A.2d at 128 (emphasis in the original). At least on these facts, "although we are dealing here with a weapon and ammunition, the mode of analysis [for constructive possession] remains the same." In re T.M., 577 A.2d 1149, 1152 (D.C.1990) (citation omitted).
"[W]here the contraband is in plain view, . . . the additional evidence necessary to prove the intent element of constructive possession [is] `comparatively minimal,' and the same would be true where the element of knowledge cannot be significantly disputed." Smith v. United States, 899 A.2d 119, 122 (D.C.2006) (quoting Rivas, 783 A.2d at 137). In the present case, the pistol was not in plain view, but the judge found that R.G. had knowledge of its presence. Although the point was energetically disputed, we conclude, in light of the circumstantial evidence that R.G. knew of the presence of the pistol (including the location of the weapon in close proximity to R.G., and in the room habitually occupied by her) that the judge's finding on that issue has ample support in the record. We simply cannot second-guess a finding which was based in part on her assessment of R.G.'s credibility, when the judge saw and heard the witness and we did not. The question whether the evidence supports a finding that R.G. intended to exercise dominion and control over the weapon, however, is more difficult.
In evaluating R.G.'s claim that the evidence of intent was insufficient as a matter of law, we must "view the evidence, both direct and circumstantial, in the light most favorable to the [District], giving full weight to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences." Poulnot v. District of Columbia, 608 A.2d 134, 137 (D.C.1992) (citation omitted); see generally Rivas, 783 A.2d at 134. We will reverse an adjudication of guilt for evidentiary insufficiency only when the District has failed to produce evidence upon which a reasonable mind might fairly find guilt beyond a reasonable doubt. In re T.M., 577 A.2d at 1151 (citation omitted).
In Rivas, we discussed the difference between the reasonable doubt standard of proof and less demanding standards, such as "preponderance of the evidence" and "clear and convincing evidence."
The reasonable doubt standard of proof requires the factfinder to reach a subjective state of near certitude of the guilt of the accused. Proof of a fact beyond a reasonable doubt is thus more powerful than proof that the fact is more likely true than not; more powerful, even, than proof that its truth is highly probable. . . . Proof beyond a reasonable doubt is not merely a guideline for the trier of fact; it also furnishes a standard for judicial review of the sufficiency of the evidence.
783 A.2d at 133-34 (emphasis added; internal citations and quotation marks omitted). The evidence linking R.G. to the pistol includes testimony that the weapon was in close proximity to her in the bedroom in which she slept. Also significant is the trial judge's finding, notwithstanding R.G.'s assertion to the contrary, that R.G. knew that the pistol was in her room. Further, there was testimony that the window sill was dusty but that the pistol was not. Finally, R.G. acknowledged that the bag of marijuana found near her bed belonged to her. One could perhaps reasonably infer from the foregoing circumstantial evidence that R.G. might have intended to exercise dominion and control over the weapon, or even that it is more *649 likely than not that she had such an intent. We conclude as a matter of law, however, largely because of the presence in the room of R.G.'s boyfriend, that the evidence did not establish R.G.'s intent beyond a reasonable doubt.[4]

III.
"In general, the settled rule in constructive possession cases is that `[m]ere presence of the accused on the premises, or simply [her] proximity to the [contraband], does not itself enable a deduction beyond a reasonable doubt that [s]he had the requisite intent.'" Rivas, 783 A.2d at 130 (quoting United States v. Staten, 189 U.S.App. D.C. 100, 106, 581 F.2d 878, 884 (1978)); see also T.M., 577 A.2d at 1151. Rather, as our en banc court has noted, "there must be something more in the totality of the circumstances that  together with proximity and knowledge  establishes that the accused meant to exercise dominion or control over the [contraband]." Rivas, 783 A.2d at 130.
There must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that [s]he had some stake in [it], some power over [it]. There must be something to prove that the individual was not merely an incidental bystander. It may be foolish to stand by when others are acting illegally, or to associate with those who have committed a crime. Such conduct or association, however, without more, does not establish the offenses here charged.
Id. (quoting United States v. Pardo, 204 U.S.App. D.C. 263, 277, 636 F.2d 535, 549 (1980)) (emphasis in original).
The District argues that the evidence of constructive possession goes beyond mere proximity because the room in which the pistol was located was R.G.'s bedroom. We have recognized that this fact is indeed a potentially significant one. In Taylor v. United States, 662 A.2d 1368 (D.C.1995), for example, we stated that
[i]t is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places.
Id. at 1373; see also Burwell v. United States, 901 A.2d 763, 767 (D.C.2006) (quoting Taylor). However, "when two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there." United States v. Crain, 33 F.3d 480, 486 (5th Cir.1994) (quoted in Burwell, 901 A.2d at 768). Here, the difficulty with the District's case is that R.G.'s boyfriend was in the room, and indeed in the bed, with R.G., and the District offered no evidence tending to show that it was not the boyfriend who owned the pistol and who brought it to R.G.'s room. Indeed, the boyfriend was also arrested.[5]
*650 The District relies on Wheeler, 494 A.2d at 171-74, but Wheeler is not dispositive of this appeal. In that case, we affirmed the defendant's conviction of unlawful possession of a controlled substance because the evidence unequivocally linked the defendant to heroin found in her hotel room. When the police knocked on the door, they heard "scurrying" noises inside. Id. at 171. The officers broke down the door, and upon entering they saw Ms. Wheeler and two other women come out of the bathroom, in which the toilet had just been flushed. Id.[6] The defendant admitted that she was staying in the room, and there was evidence that she had slept in the bed. Id. The police found heroin under the pillow on the very bed in which she had slept. Id. There was no evidence in Wheeler, as there was in this case, that a second person had been occupying the bed near to which the police found the contraband. The pistol in the present case, on the other hand, was located on a windowsill, and it was far less conclusively associated with the accused than if it had been found under her pillow and if she had been the sole occupant of the bed. The case against Ms. Wheeler was therefore substantially more compelling than the evidence against R.G. Indeed, while affirming Ms. Wheeler's conviction, the court cautioned that "mere proximity to an illegal substance will be insufficient to uphold a conviction on a theory of constructive possession when an individual is one of several people found by the authorities on the premises together with the substance." Id. at 172.
In this case, R.G. did not have exclusive control over the room at the time police recovered the pistol. On the contrary, she testified without contradiction that she was sharing her bed with a man who had come in from the street at 3:00 a.m. Moreover, nothing else in R.G.'s room linked her to the handgun. The pistol was loaded, but no other ammunition was found in the room, nor was the weapon mixed in with her belongings. There was no evasive action by R.G., or other evidence of consciousness of guilt on her part. This is in marked contrast to the situation in Wheeler, a case in which the police heard "scurrying" noises behind the door, as well as the sound of the toilet being flushed. Finally, although R.G. could theoretically be in joint constructive possession of the pistol even if the weapon belonged to her boyfriend, the District would be required to show, in order to prevail on this theory, that R.G. shared possession of the pistol with the man, or that she had a personal stake in it. We discern no evidence in the present record that could fairly be viewed as proving beyond a reasonable doubt that R.G., rather than her companion, exercised dominion and control over the pistol, or even that she exercised joint control with him.
In the circumstances here presented, we have no occasion to consider whether R.G. could properly be found criminally liable on the theory that, by failing to require the possessor of the pistol to remove it from her bedroom, she passively but willingly tolerated its presence in premises under her nominal control and thereby displayed the requisite intent to exercise dominion and control over the weapon. We express no opinion as to the abstract merits of a theory of constructive possession, and criminal liability, based on such inaction, though it poses serious issues. The District has not argued that theory in this case, the trial court did not rely on it in finding R.G. guilty, and there is scant evidence in this record on which to base a finding, beyond a reasonable doubt, that R.G. had the genuine opportunity and ability *651 to order the removal of the pistol and that she had formed the intention not to cause it to be removed. There is no evidence, for example, that the weapon was in R.G.'s bedroom for any significant period (e.g., that it was not brought there in the middle of the night by her boyfriend, only a short time before the police arrived). There likewise is insufficient evidence that, in the circumstances here presented, R.G. almost certainly had the genuine ability to order an armed man to remove his weapon from her room. Accordingly, we do not think that a reasonable trier of fact could fairly find, beyond a reasonable doubt, that R.G. voluntarily tolerated the presence of the pistol in her bedroom.

IV.
In Wheeler, we explained that if several people are in a room in which contraband is found, then "[e]ven where the government proves that the defendant is a resident of the place where illegal items are seized, the courts are wary of imputing possession to the defendant absent proof of [her] involvement in some criminal enterprise." 494 A.2d at 173; see also In re T.M., supra, 577 A.2d at 1153. The District argues that the marijuana found on a lunch pail in the vicinity of R.G.'s bed was evidence of a criminal enterprise, and that the trial judge could therefore properly infer that R.G. intended to guide the destiny of the pistol. The District also asserts that the presence of drugs and weapons in the house supported an inference of collective participation in criminal activity, and that from this joint participation, it was fair to infer that R.G. intended to exercise dominion and control over the pistol found in her bedroom.
In our view, however, the District's position in this regard is altogether unpersuasive. The only possible criminal enterprise to which R.G.'s possession of marijuana could be linked would be a plan to distribute drugs and, presumably, to use the pistol to protect the drug operation.[7] But R.G. had possessed only a single ziploc bag of marijuana, and the District itself effectively acknowledged that this one bag was for R.G.'s personal use. Actions speak louder than words; R.G. was charged with simple possession of marijuana, but not with possession of marijuana with the intent to distribute it (PWID). The District's own charging decision, and its failure to allege that R.G. intended to distribute the marijuana, belies its retrospective theory that R.G. was a part of a criminal enterprise, and that she possessed the pistol in order to defend the enterprise. See also In re T.M., supra, 577 A.2d at 1153 (rejecting "criminal enterprise" theory where juvenile respondent was not shown to have participated in handling of cocaine or its preparation for distribution); Rivas, supra, 783 A.2d at 145 (Ruiz, J., concurring) (warning that "constructive possession" doctrine should not be applied "to impose liability on a person who simply fails to dissociate from, or has mere knowledge of, the presence of contraband").[8]

*652 V.
For the foregoing reasons, we affirm the adjudication of guilt of unlawful possession of marijuana. The adjudications of guilt of carrying a pistol without a license, of possession of a unregistered firearm, and of possession of ammunition for an unregistered firearm, are reversed for insufficient evidence.
So ordered.
NOTES
[1] It is undisputed that the pistol was loaded with the ammunition, that R.G. had no license to carry a pistol, and that the weapon was unregistered. We discuss the application of the "constructive possession" doctrine to CPWOL cases at pp. 4-5, infra.
[2] R.G. testified that this window was different from the one in which the pistol was found.
[3] The judge did state, however, that "it was no mistake," but she did not elaborate on this comment.
[4] The judge, as we have noted, predicated her finding of guilt on the location of the pistol "in arm's reach of [R.G.'s] bed," and on the District's having shown "the requisite knowledge." The judge did not expressly find that R.G. had the intent to guide the destiny of the weapon. Indeed, she did not allude to that question at all. But even if the judge included the intent element in the calculus without explicitly mentioning it, the finding of guilt must be set aside, for in our view, the evidence that R.G. constructively possessed the pistol and ammunition was insufficient as a matter of law.
[5] There was also testimony, credited by the trial judge, that other members of the household also frequented R.G.'s room. There was evidence that the house had been previously searched by the police as a result of unlawful drug activity.
[6] A fourth woman was also in the room. Id.
[7] There tends to be close association between handguns and unlawful drugs. See, e.g., Irick v. United States, 565 A.2d 26, 31 (D.C.1989).
[8] R.G. told the police, and subsequently testified, that she was unaware of the presence of a pistol in her bedroom. The judge, as we have seen, rejected R.G.'s testimony on this point as incredible. We have stated that "[f]alse exculpatory [statements] made to law enforcement officers constitute independent circumstantial evidence of guilty consciousness." Allen v. United States, 603 A.2d 1219, 1226 n. 16 (D.C.1992) (en banc) (quoting Irick, 565 A.2d at 30 n. 8) (quoting Commonwealth v. Glass, 486 Pa. 334, 405 A.2d 1236, 1242 (1979)). This principle logically applies a fortiori to false testimony given under oath. See generally J. WIGMORE, EVIDENCE § 278, at 133 (Chadbourn ed.1979). Although this inference of consciousness of guilt might be viewed as strengthening the District's case to some degree, the District has elected not to press the point, and we conclude that any such inference will not render sufficient what we regard as otherwise insufficient evidence. See, e.g., Hector v. United States, 883 A.2d 129 (D.C.2005) (noting that if a negative credibility finding by the trier of fact with respect to the accused's testimony were deemed sufficient to establish guilt, then such an approach would "contradict the reason why appellate courts review convictions for sufficiency of evidencethat the trier of fact sometimes gets things wrong.") Id. at 133-34 (quoting United States v. Zeigler, 301 U.S.App.D.C. 298, 302, 994 F.2d 845, 849 (1993)) (internal brackets omitted).