Tamara R. SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–804.

District of Columbia Court of Appeals.

Submitted April 30, 2012.
Decided Nov. 15, 2012.

Joanne Vasco, Hyattsville, MD, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, with whom Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and John P. Mannarino, Anton P. Jongeneel, and Sharon A. Sprague, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and SCHWELB, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

Appellant Tamara Smith appeals her convictions of unlawful possession of a firearm ("felon in possession"), possession of an unregistered firearm, two counts of unlawful possession of ammunition, and possession of a prohibited weapon (a machine gun),[1] on the basis that there was insufficient evidence to prove beyond a reasonable doubt that she had constructive possession of the firearm and ammunition. We affirm.

## I.

On August 27, 2010, at 5:40 p.m., officers of the Metropolitan Police Department executed a search warrant at an apartment located at 3908 Stanton Road in Southeast, Washington, D.C.[2] When the officers entered the apartment, appellant was standing in the living room and her boyfriend, Maurice Evans, was standing in the hallway. In the master bedroom, which appellant shared with Evans, the officers found a purple children's backpack on the

---

1. D.C.Code § 22–4503(a)(1) (2009 Supp.); D.C.Code § 7–2502.01 (2009 Supp.); D.C.Code § 7–2506.01(3) (2009 Supp.); and D.C.Code § 22–4514(a) (2009 Supp.), respectively.

2. Our review of a transcript of a pretrial hearing indicates that the search warrant was predicated on information provided by a confidential informant who had visited the apartment within forty-eight hours prior to the search and had observed two guns therein, which the informant described as a dark col- ored AK–47 assault rifle and a black 9 millimeter semi-automatic handgun. The government was unable to locate the confidential informant for trial and did not disclose the informant's identity. The jury was not privy to the information in the affidavit used to obtain the warrant, and we do not consider it when assessing the sufficiency of the evidence. The trial judge did, however, inform the jury that the police had the right to search the closed bags found in the apartment.

floor next to the bed, leaning against an entertainment center. When the officers found the backpack, its contents were not visible. The officers opened the backpack and found a black .45 caliber Uzi style firearm and boxes of .40 caliber and .357 caliber ammunition. The officers also found a white bulletproof vest and a bore brush used to clean firearms inside the backpack. The officers found a photograph of appellant inside the entertainment center next to which the backpack was found. Additionally, the officers found a pair of men's shorts on the bed, which contained appellant's and Evans' D.C. identification cards. The officers also recovered two boxes of .357 caliber ammunition from inside the top drawer of a file cabinet located in the closet of the master bedroom. Mail addressed to Evans was in this drawer of the file cabinet. During an interview after his arrest, Evans stated that the file cabinet was his and that a cousin, who is now deceased, had put the ammunition in the file cabinet several years before. In the kitchen, the officers found mail addressed to appellant in a drawer and recovered one loose round of .38 caliber ammunition on top of a kitchen cabinet. In the loft area, which is accessible from the living room, the officers found a bare mattress, bags of clothing, mail addressed to both appellant and Evans, a photo album, a digital scale, and a Ruger gun box. Inside a closet attached to the loft, the officers discovered a closed black duffle bag that contained an assault rifle and ammunition.

During an interview conducted after her arrest, appellant stated that she lived in the apartment with Evans and his fifteen year old son.[3] She also stated that her cousin, William Howard, had a key to the apartment and "stayed there" occasionally. Appellant informed police officers that she was the only person who stayed at the apartment during the week before the search. However, Dominique Lewis, appellant's neighbor, testified at trial that she saw Howard entering and exiting the apartment during the week prior to the execution of the search warrant. Lewis testified that Howard lived in the apartment, slept in the loft area, and had clothes there. Nevertheless, Lewis had never seen Howard sleep in the master bedroom. The parties stipulated that Evans left the D.C. area on August 23, 2010, when he flew to Columbus, Ohio, and did not return to the apartment until the morning of August 27, 2010.

At trial, the government relied on a theory that appellant constructively possessed the firearm and boxes of ammunition found in the purple backpack next to her bed and the firearm and ammunition found in the black duffle bag in the loft. Appellant was tried but acquitted on the counts of possession of an unregistered firearm and unlawful possession of ammunition related to the contents of the black duffle bag found in the loft area. The jury convicted appellant of all counts related to the contents of the purple backpack and this appeal followed.

## II.

■ "When there is a sufficiency challenge, we view the evidence in the light most favorable to the prosecution to determine whether a reasonable factfinder could find guilt beyond a reasonable doubt." *James v. United States,* 39 A.3d 1262, 1269 (D.C.2012) (internal quotation marks and citation omitted). "[T]he jury is entitled to draw a vast range of reasonable inferences

---

**3.** Neither appellant nor Evans testified during the trial but police officers testified about statements made by Evans and appellant. All statements from these parties were made during post-arrest interviews conducted by the police.

from the evidence, but it may not base a verdict on mere speculation." *Id.* (citing *In re M.L.*, 24 A.3d 63, 66 (D.C.2011)) (quoting *Rivas v. United States*, 783 A.2d 125, 134 (D.C.2001) (en banc)). Ultimately, "[t]he evidence is sufficient if, after viewing it in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *id.* (emphasis in original) (internal quotation marks and citation omitted), and we reverse "[o]nly when there is no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt. . . ." *Moore v. United States*, 927 A.2d 1040, 1049 (D.C.2007) (internal quotation marks and citation omitted).

■■■ "Constructive possession, which is simply a doctrine used to broaden the application of possession-type crimes to situations in which actual physical control cannot be directly proved, is often described in terms of dominion and control." 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.1(e) (2d ed. 2003). To prove constructive possession of contraband, the evidence must show that the accused (1) had knowledge of its presence and (2) "had both the ability and the intent to exercise dominion and control over it." *Moore, supra*, 927 A.2d at 1050. "Constructive possession may be sole or joint." *Rivas v. United States*, 783 A.2d 125, 129 (D.C. 2001) (en banc); *see, e.g., Moore, supra*, 927 A.2d at 1051 (determining that "[i]t is of little moment that much of the same evidence showed constructive possession by [both of Moore's co-defendants]"). The elements of constructive possession "may be proven by direct or circumstantial evidence." *Rivas, supra*, 783 A.2d at 129.

■■■ "Where knowledge and ability to exert control over contraband are shown, the additional evidence necessary to prove constructive possession is compar-atively minimal." *Moore, supra*, 927 A.2d at 1050 (internal quotation marks and citation omitted). We have recognized that such "additional evidence" may include "[e]vidence showing the accused's control or occupancy of the premises in which the contraband is found." *Id.* Indeed, a jury is generally "entitled to infer that a person exercises constructive possession over items found in his home"; that is, by virtue of the contraband being found in an occupant's home, a juror may infer that the occupant has both knowledge of its presence and intent to exercise dominion and control of the contraband. *Id.* (internal quotation marks and citation omitted); *see also Taylor v. United States*, 662 A.2d 1368, 1373 (D.C.1995) ("It is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places."). Although this inference does apply even if a person shares the premises with others, "it is plainly not as strong an inference in that circumstance." *Moore, supra*, 927 A.2d at 1050. Therefore, "there must be something more in the totality of the circumstances—a word or deed, a relationship or other probative factor—that, considered in conjunction with the evidence of proximity and knowledge, proves beyond a reasonable doubt that the defendant *intended* to exercise dominion or control over the [contraband], and was not a mere bystander." *James, supra*, 39 A.3d at 1269 (quoting *Rivas, supra*, 783 A.2d at 128) (emphasis in original). Ultimately, "[w]hether constructive possession has been proved beyond a reasonable doubt in any given case depends on a fact-specific inquiry into all the circumstances." *Id.* (internal quotation marks and citation omitted).

■■■ Viewing the evidence in the light most favorable to the government, we conclude that the evidence was sufficient to

prove that appellant had constructive possession of the .45 caliber Uzi style firearm and the boxes of .40 caliber and .357 caliber ammunition, all of which were found in the purple backpack next to appellant's bed. The evidence established that appellant lived in the apartment and that, although she shared the bedroom in which the contraband was found with Evans, she was the sole occupant of that bedroom during the week prior to the execution of the search warrant. Furthermore, appellant's identification card was found in a pair of shorts slung over the bed near the backpack and appellant was present when the officers entered the apartment, indicating that appellant was in close proximity to the contraband prior to the search. Because the jury is entitled to infer that "a person exercises constructive possession over items found in [her] home," these facts support the reasonable inference that appellant had both (1) knowledge of and (2) the intent to exercise dominion and control over the backpack and its contents. See Moore, supra, 927 A.2d at 1050. However, this inference is "plainly not as strong" because appellant shared occupancy of the apartment with Evans, his fifteen year old son, and occasionally appellant's cousin, William Howard. Id. Accordingly, there must be "something more in the totality of the circumstances" to prove beyond a reasonable doubt that appellant intended to exercise dominion or control over the contraband and that she was not a "mere bystander." See James, supra, 39 A.3d at 1269. Here, there are two significant factors that constitute "something more."

First, although the backpack was closed when the officers initiated their search, the presence of the backpack in appellant's bedroom was conspicuous. It was a brightly colored purple backpack, designed for children, and no children lived in the apartment. The brightly colored children's backpack was conspicuously leaning in plain sight against an entertainment center adjacent to appellant's bed. Importantly, the backpack was not secreted in a closet or hidden out of sight. Nor was it a typical "man's backpack" that was in an area of the bedroom that suggested it was in Evans' sole possession, such as a drawer or closet used only by Evans. Second, regardless of whether the jury credited the police officers' testimony indicating that appellant told the police after her arrest that she was alone in the apartment during the week prior to the search or, alternatively, the testimony from appellant's neighbor that Howard was in and out of the apartment that week, it was undisputed that appellant was alone in the master bedroom during that period. Thus, appellant was the sole occupant of the master bedroom for several days before the search, with ample ability to control the backpack and its contents, conspicuously located in her bedroom next to her bed. From these facts, a juror could reasonably infer that appellant had the requisite intent to exercise control over the backpack.

Notably, the jury acquitted appellant of all counts related to the contraband in the black duffle bag that the police found in the closet of the loft area. This verdict suggests that the jurors' review of the evidence was nuanced. The verdict reflected that appellant's connection to the black duffle bag was more attenuated than her connection to the purple backpack because the black duffle bag was not found in appellant's bedroom and was not in a conspicuous location, notwithstanding that some of her personal items were found in the loft area where the police recovered the duffle bag. The jury arguably discerned that the "something more" required to establish constructive possession was lacking with respect to the black duf-

fle bag. Consequently, the jury found that the evidence related to those charges was insufficient to support a theory that appellant constructively possessed the contraband therein.

This case is distinguishable in several critical aspects from *In re R.G.*, 917 A.2d 643 (D.C.2007), upon which appellant relies, where we held that R.G. did not have constructive possession of a pistol found in her bedroom, within several feet of where she was found sleeping. In *R.G.*, there was evidence that the windowsill on which the pistol was found was dusty but that the pistol itself was not, suggesting that the pistol had recently been brought into R.G.'s bedroom, and R.G. testified that her boyfriend had entered her room in the early morning hours. 917 A.2d at 648–49. Here, appellant was the sole occupant of the master bedroom for the week prior to execution of the search warrant. In *R.G.*, we noted that "the difficulty with the District's case is that R.G.'s boyfriend was in the room, and indeed in the bed, with R.G., and the District offered no evidence tending to show that it was not the boyfriend who owned the pistol and who brought it to R.G.'s room." *Id.* at 649. In contrast, whereas R.G. did not have exclusive control over the room when the police recovered the pistol, appellant had exclusive control over her bedroom while Evans was out of town until shortly before the police executed the warrant and appellant and Evans were not in bed together when the police arrived. The court in *R.G.* also expressed concern as to whether R.G., who was a minor, had the ability to order an armed adult man to remove the weapon from her bedroom. *Id.* at 651. In this case, however, a reasonable juror could find that appellant had the ability to exercise dominion and control over the backpack and its contents when she was the sole occupant of the bedroom for the week prior to the search.

This case is also distinguishable from *Rivas v. United States*, where we reversed the conviction despite finding that the accused was in close proximity to the cocaine and had knowledge of its presence. 783 A.2d 125 at 134–35. In *Rivas*, we held that, although it was suspicious that Rivas had been in the car next to the cocaine, which was in plain sight, and that he walked away from the scene when police arrived, the evidence was insufficient to prove beyond a reasonable doubt that Rivas harbored the requisite intent to possess the cocaine and was not a "mere bystander" who was in "the wrong place at the wrong time." *Id.* at 135–38. We were troubled by the lack of evidence to establish "how long Rivas had been in the car, how he had come to be there, or what he had been doing." *Id.* at 134. Here, we know that appellant was not just a visitor who happened to be found at the apartment when the police arrived. To the contrary, the evidence established that appellant lived there and her belongings were scattered throughout the apartment. Indeed, her identification card was found in close proximity to the purple backpack in her bedroom. Consideration of the evidence in its totality—especially that appellant was the sole occupant of the master bedroom for several days before the search and therefore had the ability to exercise control over the conspicuously colored backpack that was in her bedroom next to her bed—belies the possibility that appellant was a "mere bystander."

While we acknowledge that this is a close case, we emphasize that for purposes of our review, we must view the evidence in the light most favorable to the government and reverse only "when there is no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Moore, supra*, 927 A.2d at 1049. The evidence presented during tri-

al, especially that appellant was the sole occupant of the master bedroom during the week before the search and that the backpack was conspicuously located in her bedroom near her personal items, bolstered the permissible inference that "a person exercises constructive possession over items found in [her] home." This enabled a reasonable juror to find beyond a reasonable doubt that appellant had (1) knowledge of, and (2) the opportunity and intent to exercise dominion and control over the purple backpack and its contents.[4] Consequently, the evidence was sufficient to prove that appellant constructively possessed the Uzi style firearm and the ammunition found in the purple backpack in her bedroom.

For the foregoing reasons, appellant's convictions are hereby

*Affirmed.*

SCHWELB, Senior Judge, concurring in part and concurring in the judgment:

As the court acknowledges near the conclusion of its opinion, this is indeed a "close case." That is hardly a rarity in "constructive possession" prosecutions. More than forty years ago, in his concurring opinion in *United States v. Holland,* 144 U.S.App.D.C. 225, 227–28, 445 F.2d 701, 703–04 (1971), Judge Tamm commented that "the more cases one reads on constructive possession, the deeper is he plunged into a thicket of subjectivity.... It is illogical to believe that from the chaotic patchwork which flows *ex cathedra,*

there is created a stable and definable body of law." Unfortunately, the intervening decades have not, in my judgment, significantly allayed the concern expressed by Judge Tamm in *Holland,* and the liberty of the citizen often turns on largely subjective judgments.

In this particular case, I have no doubt that there was ample circumstantial evidence to permit an impartial juror to find beyond a reasonable doubt that Ms. Smith had knowledge not only of the purple backpack in the bedroom that she shared with her boyfriend, Maurice N. Evans, but also of the bag's deadly contents, which included a .45 caliber Uzi style machine gun and numerous rounds of ammunition. The only question of substance presented in this appeal is whether the prosecution established the final and most challenging element of a constructive possession case, namely, proof beyond a reasonable doubt that the defendant *intended,* individually or jointly with Evans, to exercise dominion and control over the contraband and to guide its destiny. *See In re R.G.,* 917 A.2d 643, 648, 649 n. 4 (D.C.2007). This question, in my view, largely turns on whether or not the present case is controlled by our decision in *R.G.,* which is the main authority relied on by Ms. Smith's counsel on appeal.

For the reasons summarized below, I am of the opinion that the principal distinctions from *R.G.* suggested by the government, and to some extent by the court, are unrealistic and, at least to me, uncon-

---

4. In evaluating sufficiency challenges in the context of charges other than constructive possession, we have recognized that "[i]ntent can rarely be proved directly, and must often be discerned from the surrounding circumstances." *Gray v. United States,* 585 A.2d 164, 165 (D.C.1991) ("Although the evidence arguably does not exclude every hypothesis inconsistent with an intent to kill—[the appellant] might conceivably have intended only to

wound the children—this does not invalidate the jury's verdict. The evidence need not *compel* a finding of guilt beyond a reasonable doubt."); *see also Long v. United States,* 687 A.2d 1331, 1346 (D.C.1996) ("It is well established that the jury may infer the intent to rob from the 'totality of the evidence.'"); *Bailey v. United States,* 831 A.2d 973, 986 (D.C.2003) ("Intent is often inferred from surrounding circumstances.").

vincing. Nevertheless, the two cases are, in my judgment, fundamentally different at their core, and although the issue is not free from doubt, I agree that Ms. Smith's convictions for "Felon in Possession" and related weapons offenses should be affirmed.

## I.

In *R.G.*, the police executed a search warrant during the early hours of the morning in seventeen-year-old respondent R.G.'s bedroom. They recovered a loaded .38 caliber pistol from a window sill adjacent to the bed which R.G. was sharing with her adult boyfriend. Both R.G. and the boyfriend were arrested and charged, *inter alia*, with carrying a pistol without a license (CPWOL).

R.G. testified that she was unaware of the presence of the weapon and that the boyfriend must have brought it with him when he came to visit her at 3:00 a.m. that day, a few hours before the arrival of the officers. There was dust on the window sill but not on the pistol, a fact which tended to corroborate R.G.'s claim that the pistol had not been at that location for an extensive period of time.

The trial judge adjudicated R.G. to be guilty of CPWOL and related offenses. The judge did not believe R.G.'s claim that she (R.G.) was unaware of the presence of the pistol. The judge did not, however, explicitly address the "intent" element of constructive possession. This court unanimously reversed the adjudication of guilt, concluding as a matter of law that although there was ample evidence to support the trial judge's finding that R.G. knew of the presence of the pistol, the District of Columbia had failed to prove beyond a reasonable doubt that R.G. intended to exercise dominion and control over the weapon.

## II.

In its brief in the present case, the government emphasizes that Ms. Smith's boyfriend (and co-resident) had been out of town for a week or so, returning to the apartment earlier on the day that the police executed the search warrant, and that during his absence, Ms. Smith had been the only person staying in the unit. It was especially significant, according to the government, that by her own admission, Ms. Smith "was the only one who had stayed [at the apartment]—and thus had control of the premises—in the week leading up to the execution of the search warrant." My colleagues in the majority seem to agree with the government, and they too focus on the fact that Ms. Smith "was the sole occupant of the master bedroom for the week prior to the execution of the search warrant." Why, the government and the majority implicitly ask, did Ms. Smith not get rid of the contraband while she was in control?

Why not, indeed? I suggest that to decide the case on the theory that Ms. Smith is guilty because she did not remove the Uzi and ammunition during her boyfriend's brief absence is to adhere to the dubious principle that, in the informal and ironical (but unpublished) phrase coined by one of my colleagues on the court, we must "hold the line against creeping practicality." First, on the record before us, no trier of fact could fairly find beyond a reasonable doubt that the Uzi and ammunition were brought to the apartment during the week that Ms. Smith was there alone. Indeed, Ms. Smith's boyfriend acknowledged to the police that some of the ammunition—though not the rounds recovered from the bedroom—belonged to him and had been in the apartment for years.

If the contraband was already in the unit when Evans left, then I suppose that

theoretically, Ms. Smith could have removed it while he was gone. That seems to be the supposition on which the government finds his absence relevant. Had she tried to do what the government apparently believed that she was obliged to do to avoid criminal liability, however, she would have confronted some well-nigh insuperable difficulties. First, she would have had to find a person (or place) to whom (or to which) she could take it. Even if she had succeeded in that endeavor, then in order to transport the pistol and ammunition, she would have been obliged to take these items into her *actual* (and not merely constructive) possession and to carry them to their destination. For a person such as Ms. Smith, who had a recent felony conviction, this would have been a perilous, even foolhardy, course of action. Ms. Smith could, of course, have called the police—she would not be guilty of CPWOL if her only contact with the Uzi and ammunition was to turn them in to the authorities—and this might perhaps have been the noble thing to do. But aside from the question whether the police would have believed her if she professed innocence—a supposition on which I would not venture to place a wager—she could understandably have been reluctant to do this, perhaps because of her love for (or fear of) Evans,[5] and more generally because of awareness that life can be perilous for a "snitch." Further, given the obvious potential for self-incrimination if Ms. Smith had called the police, one wonders what advice she would have received if she had sought the advice of a responsible attorney. In any event, at least in my judgment, Evans' absence from the apartment for a week sheds no realistic light on the proper outcome of this appeal, and I cannot agree with the government's and the majority's contrary view.

My colleagues also attempt to distinguish *R.G.* on another (but related) ground, as follows:

> The court in *R.G.* also expressed concern as to whether R.G., who was a minor, had the ability to order an armed adult man to remove the weapon from her bedroom. *Id.* at 651. In this case, however, a reasonable juror could find that appellant had the ability to exercise dominion and control over the backpack and its contents when she was the sole occupant of the bedroom for the week prior to the search.

Although it is true that R.G. was a minor—she was seventeen years old—I do not believe that the outcome of her appeal would have been different if she had been a year older, or even twice as old. Tamara Smith was thirty-four years of age at the time of her arrest, but ordering an armed man to remove weapons from the apartment they shared would surely be a perilous venture regardless of a woman's age. Further, for the reasons I have described, Evans' trip out of town was, in my judgment, largely irrelevant. I therefore cannot associate myself with the stated grounds on which the majority seeks to distinguish this case from our unanimous decision in *R.G.*

### III.

Notwithstanding my views as set forth above, however, I do not believe that the decision in *In R.G.* controls this appeal. Although I agree with my colleagues that the case is a close one, I conclude, albeit not without with some hesitation, that Ms. Smith's convictions should be affirmed.

---

5. If the contraband belonged to Mr. Evans and Ms. Smith turned it over to the police, she would, among other things, be stealing Evans' property, albeit property he presumably had no legal right to possess.

As I have suggested at the outset of this opinion, this case and R.G. differ at their core. The differences between them do not turn either on Evans' brief absence from the apartment or on R.G.'s tender years. *R.G.* was a case involving a single pistol that was apparently in the respondent's bedroom for only a few hours. There was nothing to associate R.G. with the weapon beyond its short-lived presence following the arrival of her nocturnal visitor. This conclusion is supported not only by R.G.'s testimony (parts of which the judge did not find credible) but by the undisputed fact that the window sill was dusty and the pistol was not. The District did not prove (or even claim) that any weapons were located in R.G.'s bedroom on a long-term basis, nor was there any persuasive evidence that R.G. intended to exercise dominion and control over the pistol that was apparently brought there by her boyfriend in the middle of the night.

The facts in Ms. Smith's case are dramatically different. When the police arrived at the apartment to execute the search warrant, they found themselves in what amounted to, or at least suggested, a small indoor arsenal or garrison. Recovered from various locations in the apartment were a .45 caliber Uzi style machine gun, a black assault-style weapon, and well over 150 rounds of .357 and other ammunition, as well as a bulletproof vest, a gun-cleaning kit, and several indicia of a drug selling operation. Evans admitted to the police that some of the .357 ammunition had previously belonged to a now-dead relative and had previously been in his own possession for many years.[6]

Viewing the record, as we must, in the light most favorable to the prosecution, and drawing all reasonable inferences in the prosecution's favor, an impartial juror could surely find beyond a reasonable doubt that Ms. Smith, a resident of the apartment, knew of the weaponry that was located there, and especially of the Uzi and the ammunition in the closed backpack found near her bed, *i.e.*, the contraband of which she was convicted of possessing. This is true even though the items were not in plain view when the police entered.

This does not, of course, resolve the issue whether the prosecution proved that Ms. Smith had the requisite intent. In *R.G.*, we recognized that the constructive possession doctrine should not automatically be applied "to impose liability on a person who simply fails to dissociate from, or has mere knowledge of, the presence of contraband." *Id.* at 651 (quoting *Rivas v. United States,* 783 A.2d 125, 145 (D.C. 2001) (en banc) (Ruiz, J., concurring)).[7] We also reiterated, however, that where contraband (as here) is not in plain view, but where "the element of knowledge cannot be significantly disputed," the "additional evidence necessary to prove the intent element of constructive possession is comparatively minimal." *Id.* at 648 (quoting *Smith v. United States,* 899 A.2d 119, 122 (D.C.2006) (brackets and internal quotation marks omitted)). As Judge Tamm recognized four decades ago in *Holland,* it was not easy then to derive a clear rule from the precedents, and it is not appreciably easier now.

Few constructive possession cases are simple. Whether a given factual situation involves the intent to exercise dominion

---

6. Evans entered a guilty plea with respect to this ammunition.

7. *But see also R.G., id.* at 650 (declining to decide under what, if any, circumstances, passive but willing tolerance of the presence of contraband satisfies the intent required for constructive possession).

and control over contraband, either individually or jointly, rather than "mere" failure to dissociate oneself from it, is often a tough and in some measure subjective judgment call. That call is, however, essentially one for the jury. In many (perhaps most) instances, intent can be established only by circumstantial evidence. In this case, Ms. Smith lived with her boyfriend for some appreciable period of time in an apartment containing a significant amount of unlawful weaponry. The Uzi and ammunition which led to her conviction were found adjacent to the bed she shared with Evans. There was no evidence that she ever made even a modest request that the contraband be removed, or that she was displeased in any way by its presence. The jury could still plausibly have found that she was merely a tolerant co-resident and that the government did not prove the contrary. Conceivably, I might have so concluded had I been the trier of fact. Ms. Smith was sentenced to serve significant prison time, and especially in such circumstances, we should require the jury to be able to reach a "subjective state of near-certitude of the guilt of the accused," before sustaining the conviction. *Id.* at 648 (quoting *Rivas*, 783 A.2d at 133–34 (emphasis and citations omitted)).

The applicable standard, however, is whether *any* reasonable juror could, on these facts, find the requisite intent beyond a reasonable doubt. For me, that is not at all an easy call, but I am not prepared, on this record, to second-guess the verdict of the jury. Accordingly, I join my colleagues in voting to affirm the judgment.