*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CM-1117

ADRIENNE JOHNSON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-625-17)

(Hon. Judith A. Smith, Trial Judge)

(Submitted January 29, 2019                          Decided May 9, 2019)

*Sweta Patel* was on the brief for appellant.

*Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman, Nicholas P. Coleman*, *Janani Iyengar*, and *Kristina L. Ament*, Assistant United States Attorneys, were on the brief for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*: Following a bench trial in the Criminal Division of the Superior Court, appellant Adrienne Johnson was found guilty of attempted second-degree cruelty to children and attempted possession of a prohibited weapon (PPW). Appellant argues that the trial court erred when it denied her motion to

suppress her statements to the police and that the evidence was insufficient to support her convictions. For the following reasons, we affirm.

**I.**

On May 14, 2017, appellant beat her thirteen-year-old son A.J. with a wooden stick about the size of a broomstick. Appellant repeatedly hit A.J. with the stick while he sat on the floor in the corner of his room and raised his left arm to block his face. The stick broke during the beating, and appellant continued to strike A.J. with the two broken pieces. As a result of the beating, A.J. sustained bruises and marks to his arms, shoulder, and legs, and had a mark behind his left ear.

On May 15, 2017, Ricky Clayton, a social worker for the Child and Family Services Agency (CFSA), called appellant to follow up on her case that was already open with CFSA.[1] During that phone call, appellant stated that she beat

---

[1] Before the incident, appellant went to CFSA with her three sons, including A.J., indicating that she wanted to relinquish her care of them because they had been misbehaving and A.J. especially had not been taking her seriously, and CFSA agreed to provide her with assistance in taking care of her children.

A.J. because he "broke into her room" and retrieved his Kindle Fire tablet that appellant kept in her room as a punishment. That same day, Metropolitan Police Department Detective Karane Williams-Thomas was assigned to appellant's case as a "hot case," and she went to appellant's home with her partner Detective Aaron Mackinoff and social worker Kimberly Hayes to interview appellant and her two younger sons. Appellant answered the front door, and Detective Williams-Thomas introduced herself, stating that she was investigating an allegation of physical abuse. At appellant's home, individuals from CFSA's Homebuilders program were already present. Appellant admitted the detectives and social worker into her home and gave them permission to interview her two younger sons while she spoke with the individuals from the Homebuilders program. Detective Williams-Thomas's service revolver was underneath her jacket, and she was not with any uniformed police officer. After the detective interviewed appellant's sons, she interviewed appellant in her living room for about thirty minutes. During the interview, Detective Williams-Thomas was just standing off the stairwell while appellant was at a desk, and Detective Mackinoff was outside of the house, making phone calls near the front door. Detective Williams-Thomas testified that she never took handcuffs out, she never touched appellant, she never threatened appellant, and she never told appellant that she was under arrest.

On May 16, 2017, appellant was charged with two counts of attempted second-degree cruelty to children, in violation of D.C. Code § 22-1101(b) (2012 Repl.), and two counts of attempted PPW, in violation of D.C. Code § 22-4514(b) (2012 Repl.), one set of counts involving a stick and the other set involving a belt. On June 26, 2017, appellant filed a pretrial motion to suppress her statements to the police at her home, alleging that the statements were obtained in violation of the Fifth Amendment. A bench trial was held on September 8, 14, and 18, 2017. During the trial, the court denied appellant's motion to suppress, and, on October 2, 2017, the court found appellant guilty of one count of attempted second-degree cruelty to children and one count of attempted PPW, each involving the stick, and not guilty of the remaining counts involving the belt. Appellant was sentenced to ninety days' imprisonment on each count, with the execution of the sentence suspended, and was placed on one year of supervised probation. This appeal followed.

## II.

### 1. Motion to Suppress

Appellant argues that the trial court erred when it denied her motion to suppress her statements to the police because she was subject to custodial

interrogation but was not advised of her *Miranda* rights.[2]  Appellant contends that she was in custody because both detectives were armed, she was never informed that she was free to leave or that she could refuse questioning, she was interrogated about a crime, and Detective Mackinoff's presence near the door created an impression that she could not leave her house.  The government acknowledges that appellant was interrogated but disputes that appellant was in custody.

"An individual is in custody for *Miranda* purposes only where there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Morales v. United States*, 866 A.2d 67, 71 (D.C. 2005) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted)).  "Whether the curtailment of freedom rises to that level is to be assessed by reference to how a reasonable man or woman in the suspect's position would have understood his or her situation."  *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (brackets and internal quotation marks omitted)).  To make this determination, the court must consider the totality of the circumstances of the interrogation. *Id.* at 71-72.

---

[2]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

In reviewing a trial court's denial of a motion to suppress on *Miranda* grounds, we defer to its factual findings. *Jones v. United States*, 779 A.2d 277, 281 (D.C. 2001) (en banc). Moreover, we view the facts and all reasonable inferences from those facts in the light most favorable to the prevailing party at trial. *Id.* However, we review the ultimate question of law de novo, and whether, on the established facts, appellant was under custodial interrogation without *Miranda* warnings is a question of law. *Id.*

Here, the trial court found that Detective Williams-Thomas's weapon was concealed; during appellant's interview, Detective Mackinoff was outside the front door making phone calls, not standing or guarding at the door; the interview took place in appellant's living room, where Detective Williams-Thomas was just standing off the stairwell while appellant was at a desk; and the tone of the interview was conversational. The trial court's factual findings are supported by the record. Therefore, the question before us is whether, on these facts, appellant was in custody within the meaning of *Miranda*. Based on our case law, and particularly on our decision in *Morales v. United States*, 866 A.2d 67 (D.C. 2005), we conclude that the record does not show that the police created an atmosphere of coercion that amounts to custody.

Appellant was questioned in "the familiar surroundings of her own home" for a "comparatively brief" duration of about half an hour. *Morales*, 866 A.2d at 72. The tone of the interview was conversational and "neither menacing nor belligerent." *Id.* Although "the police did not tell [appellant] that she was free to terminate the interview, they did not threaten her with arrest or tell her that she had no choice but to cooperate with them." *Id.* Appellant was neither handcuffed nor physically restrained, and Detective Williams-Thomas did not brandish her weapon. *Id.* Finally, Detective Mackinoff was not standing or guarding at the door, but even if his presence created an impression that appellant could not leave the house, "the question in a custody inquiry is *not* whether a reasonable person would believe he was not free to leave, but rather whether such a person would believe he was in police custody of the degree associated with formal arrest." *Id.* at 73 (brackets and citation omitted). The manner in which the interrogation occurred here did not amount to a restraint on liberty that is comparable to a formal arrest. *Id.* Therefore, we conclude that there was no *Miranda* violation because appellant was not in custody when she was questioned by the police at her home.

## 2. Sufficiency of the Evidence

Next, appellant argues that the government's evidence was insufficient to support her convictions. In reviewing a claim of sufficiency of evidence, "we must review all evidence in the light most favorable to the government and give deference to the right of the fact finder to weigh the evidence, determine the credibility of the witnesses, and draw all justifiable inferences of fact, making no distinction between direct and circumstantial evidence." *Dorsey v. United States*, 902 A.2d 107, 111 (D.C. 2006) (citation, internal quotation marks, and brackets omitted). We can reverse a conviction "only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Florence v. United States*, 906 A.2d 889, 893 (D.C. 2006) (citation omitted).

### a. Second-Degree Cruelty to Children

Appellant contends that the evidence was insufficient to support her conviction of second-degree cruelty to children because the government failed to rebut appellant's defense that she was acting under the parental discipline privilege. "A person commits the crime of cruelty to children in the second degree

if that person intentionally, knowingly, or recklessly . . . [m]altreats a child or engages in conduct which causes a grave risk of bodily injury to a child." D.C. Code § 22-1101(b)(1). However, this jurisdiction does not outlaw physical discipline of children, and a parent charged with cruelty to children may claim the privilege of parental discipline. *Lee v. United States*, 831 A.2d 378, 380 (D.C. 2003). If the parent raises this defense, then the government has the burden of refuting it by proving beyond a reasonable doubt either that the parent's purpose in resorting to force was not disciplinary or that the force was unreasonable. *Id.* at 380-81. "The circumstances to be considered when determining whether the punishment was unreasonable include the child's age, health, mental and emotional development, alleged misconduct on this and earlier occasions, the kind of punishment used, the nature and location of the injuries inflicted, and any other evidence that may be relevant." *Id.* at 381 (brackets, citation, and internal quotation marks omitted).

Here, the trial court found that A.J.'s actions warranted punishment and appellant intended to discipline him, but her use of force was excessive. We conclude that the government adduced sufficient evidence to support the trial court's finding that appellant's behavior was excessive and unreasonable. The record shows that appellant struck A.J. with a wooden stick that was as thick as a

broomstick, that she used force hard enough to break the stick and cause bruises and marks on A.J.'s body, and that she repeatedly struck A.J., even after the stick broke. The record also shows that appellant's behavior was not controlled or measured. She stood over A.J. while he was sitting on the floor in the corner of his room and beat him indiscriminately, resulting in marks and bruises on his arms, shoulder, and legs, and even a mark on his left ear.

Appellant relies on our decision in *Florence v. United States*, 906 A.2d 889 (D.C. 2006), to argue that her use of force was reasonable. However, in *Florence*, we found that the mother's discipline was "measured" when she hit her eleven-year-old daughter with an unheated curling iron once on her leg and at most twice on her hand, resulting in the child's hand being swollen but no other injury. *Id.* at 891-92, 895. Also, the child, who was five feet, five inches tall and 269 pounds, had a history of hitting and pushing her mother and engaged in a physical struggle to take the curling iron before her mother hit her. *Id.* at 890 n.2, 891-92. By contrast, in this case, appellant repeatedly, forcefully, and indiscriminately beat A.J. with a broomstick-like stick while he was sitting on the floor in the corner of his room with his arm over his head. On this record, we perceive no error in the trial court's determination that appellant's behavior went beyond reasonable parental discipline.

**b. Attempted Possession of a Prohibited Weapon (PPW)**

Finally, appellant argues that the evidence was insufficient to support her conviction of attempted PPW. To establish the offense of attempted PPW, the government must show beyond a reasonable doubt that appellant attempted to possess a "dangerous weapon" with "intent to use [it] unlawfully against another." D.C. Code § 22-4514(b). Because we affirm appellant's conviction for second-degree cruelty to children, we find that there was sufficient evidence that appellant had intent to use the wooden stick unlawfully against A.J. Therefore, the question before us is whether the wooden stick was a dangerous weapon.

An object is a dangerous weapon if it is "known to be likely to produce death or great bodily injury in the manner it is used, intended to be used, or threatened to be used." *Harper v. United States*, 811 A.2d 808, 810 (D.C. 2002) (citation and internal quotation marks omitted). We have defined "great bodily injury" as "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental facility." *Stroman v. United States*, 878 A.2d 1241, 1245 (D.C. 2005) (quoting *Alfaro v.*

*United States*, 859 A.2d 149, 161-62 (D.C. 2004)). An ordinary object that is not dangerous per se may become a dangerous weapon if the object is used in a way that is likely to produce death or great bodily injury. *Alfaro*, 859 A.2d at 160-61; *Arthur v. United States*, 602 A.2d 174, 177 (D.C. 1992). The actual injury inflicted by the object is an important factor in deciding whether the object is dangerous. *Stroman*, 878 A.2d at 1245.

Here, the government presented sufficient evidence to support the trial court's finding that the wooden stick was a dangerous weapon within the meaning of D.C. Code § 22-4514(b). As noted above, the record shows that appellant struck A.J. with a wooden stick that was as thick as a broomstick, she used force hard enough to break the stick and cause bruises and marks on A.J.'s body, and she repeatedly struck A.J., even after the stick broke. The record also shows that appellant struck A.J. indiscriminately without taking any precaution to avoid striking parts of A.J.'s body that would cause serious injury, such as his head or face. She repeatedly beat A.J. while standing over him as he sat on the floor, and even though A.J. blocked his face with his left arm, he sustained a mark on his left ear, in addition to having marks and bruises on his arms, shoulder, and legs. We find that appellant's use of the wooden stick in this manner was likely to produce great bodily injury.

Appellant argues that the stick was not a dangerous weapon because it did not *actually* produce great bodily injury, noting that there were no open wounds, swelling, broken bones, bleeding, black or busted eyes, or purple bruising, but our legal standard is whether such injury is *likely* to occur. *Alfaro*, 859 A.2d at 161. Hence, while the actual injury inflicted by the object in question is an important factor in establishing its dangerousness (and in some cases the determining factor), *Stroman*, 878 A.2d at 1245, the absence of such injury does not necessarily indicate that the object was not dangerous. Here, the record viewed in the light most favorable to the government indicates that appellant repeatedly and forcefully beat A.J. with a broomstick-like wooden stick in an indiscriminate manner, without avoiding hitting areas like his face or head, and this is sufficient evidence to support a finding that appellant used a dangerous weapon within the meaning of D.C. Code § 22-4514(b).

## III.

For the foregoing reasons, appellant's convictions are affirmed.

*So ordered.*